**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 12-21965-CIV-ALTONAGA/Simonton**

**UTI, UNITED STATES, INC.**,

    Plaintiff,

vs.

**BERNUTH AGENCIES, INC.**,
and **BERNUTH LINES, LTD.**,

    Defendants.
_____/

**ORDER**

**THIS CAUSE** comes before the Court on Defendants, Bernuth Agencies, Inc. and Bernuth Lines, Ltd.'s Motion to Dismiss . . . ("Motion") [ECF No. 5], filed on August 7, 2012. Plaintiff UTI, United States, Inc. filed a Complaint [ECF No. 1] on May 24, 2012. The Complaint contains three claims — Count One for violation of the Carriage of Goods by Sea Act ("COGSA"), 48 U.S.C. section 30701, *et seq.*; Count Two for negligence; and Count Three for bailment. (*See generally* Complaint). Defendants' Motion seeks to dismiss Counts Two and Three of the Complaint and to strike a request for attorney's fees. Plaintiff filed a Memorandum of Law in Opposition . . . ("Response") [ECF No. 10] to the Motion on August 24, 2012, to which Defendants replied ("Reply") [ECF No. 17] on September 7, 2012. The Court has carefully considered the parties' written submissions and applicable law.

CASE NO. 12-21965-CIV-ALTONAGA/Simonton

## I. BACKGROUND[1]

This case involves a dispute between a cargo shipper and a common carrier over an agreement to ship goods by sea.  The cargo shipper, Plaintiff, is a New York corporation.  (*See* Compl. ¶ 3).  The common carrier Defendants own, operate, and control a sea vessel that carried Plaintiff's goods from Miami, Florida to Rio Haina, Dominican Republic.  (*See id.* ¶¶ 2, 4).  The allegations underlying the dispute are as follows.

In May 2011, Plaintiff delivered to Defendants goods for shipment in normal condition pursuant to Bill of Lading 405611 [ECF No. 17-2].  (*See id.* ¶ 5).  Upon arrival at their final destination on August 5, 2011, the goods were in a damaged condition.  (*See id. ¶* 6).  Count One of the Complaint is for COGSA liability, and alleges that by delivering damaged goods, Defendants breached their duties as common carriers under the COGSA.  (*See id. ¶¶* 7–8).  Count Two, for negligence, alleges that Defendants negligently loaded, handled, stowed, carried, discharged, and delivered the cargo, thereby causing the cargo to be damaged during the voyage.  (*See id. ¶¶* 9–10).  Count Three is for bailment, as Defendants were bailees of the cargo, and the bailment was for the mutual benefit of the parties.  (*See id. ¶* 11).  Count Three further states that the bailment was made express by oral contract, written contract, and the Bill of Lading, or, alternatively, was an implied contract or duty otherwise assumed; in any case, Defendants breached their duties as bailees when they delivered the goods in a damaged condition.  (*See id.* ¶¶ 12–14).  Due to the foregoing events, Plaintiff seeks damages in excess of $346,500 and requests an award of attorney's fees and costs.  (*See id.* 3–4).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[1] The facts are taken from the Complaint and are presented in the light most favorable to Plaintiff.

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 129 S. Ct. at 1949).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

### III.  DISCUSSION

Defendants assert that Plaintiff's claims in Counts Two and Three should be dismissed because they are preempted by the COGSA. Defendants further argue that Plaintiff's request for attorney's fees should be stricken. The Court addresses Defendants' arguments in turn.

### A.  COGSA Preemption

The "COGSA was intended to govern all contracts for carriage of goods between the United States and foreign ports." *Polo Ralph Lauren, L.P. v. Tropical Shipping & Const. Co.,*

*Ltd.*, 215 F.3d 1217, 1220 (11th Cir. 2000) (citation omitted). The COGSA requires that a carrier "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." *Eurosistemas, S.A. v. Antillean Marine Shipping, Inc.*, No. 11-21546-CIV-COOKE, 2011 WL 3878357, at \*2 (S.D. Fla. Sept. 1, 2011) (internal quotation marks and citation omitted). Generally speaking, the COGSA only governs during the time after cargo is loaded and before it is removed from the ship. *See Polo*, 215 F.3d at 1220. "But COGSA also gives the option of extending its rule by contract." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 29 (2004) (citation omitted); *see Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 130 S. Ct. 2433, 2440 (2010) (citing *id.*) (same). Furthermore, where the COGSA applies, it preempts state law claims. *See Polo*, 215 F.3d at 1220; *Eurosistemas*, 2011 WL 3878357, at \*2 (citing *id.*) ("Under COGSA, claims made pursuant to a bill of lading completely preempt state law causes of action and confer jurisdiction to federal district courts; plaintiffs are entitled to a single remedy and all other tort claims are excluded.").

Defendants argue that Counts Two and Three of the Complaint should be dismissed because "[w]here COGSA applies, as it does in the present matter, COGSA [preempts] other causes of action and provides the exclusive remedy." (Mot. 3 (collecting cases)). Plaintiff agrees that the COGSA generally preempts tort claims, but disagrees that it preempts Counts Two and Three of the Complaint, which may not arise out of "actual ocean transit." (Resp. 2). In other words, Plaintiff contends that the COGSA applies only to tort claims based upon damage incurred to goods during the course of a sea voyage, while the Complaint specifically alleges Defendants "undertook (in addition to mere ocean transit) handling, discharge, and accessorial transport undertakings . . . as well as loading, and delivery obligations." (*Id.* (citing Compl. ¶¶ 6, 9–10)). Thus, "[b]ecause the claims for negligence and bailment" could arise from

CASE NO. 12-21965-CIV-ALTONAGA/Simonton

damage to the goods that occurred "outside of the strict and actual ocean transit," Plaintiff asserts

"it is premature to determine whether preemption may apply." (*Id.*).

In their Reply Defendants assert that to the extent Plaintiff alleges damage occurred

before loading or after discharge, claims for that damage also are "preempted by COGSA

inasmuch [sic] the Bill of Lading extends COGSA to such activity." (Repl. 2 (citation omitted)).

Defendants point out that the COGSA can be contractually extended to cover claims arising

outside of ocean transit and contend that just such an extension took place here. In support,

Defendants attach a copy of the Bill of Lading [ECF No. 17-2], which reads:

> (2) Where loss or damage has occurred between the time of receipt of the
> Goods by the Carrier at the port of loading and the time of delivery by the
> Carrier at the port of discharge, or during any prior or subsequent period
> of carriage by water, the liability of the Carrier shall be determined as
> follows:
>
> > (a) If the carriage is to or from the United States of America, the
> > "Carriage of Goods by Sea Act 1936" (COGSA) of the United
> > States of America, shall apply.

(Bill of Lading 2, § 4(2)(a)).

Having perhaps anticipated this final argument, Plaintiff argued in its Response that

while the Bill of Lading may have contractually extended the COGSA to the pre-loading and

post-discharge periods, there is an important "distinction between [the] application of COGSA as

a matter of statute . . . [and] as a matter of contract." (Resp. 3). Plaintiff stakes its argument on

the following passage from *Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349,

355–56 (5th Cir. 2004):

> COGSA only applies compulsorily during the tackle-to-tackle period to
> contracts for the carriage of goods to or from U.S. ports in foreign trade.
> 46 U.S.C. app. § 1312. A carrier and a shipper may extend COGSA's
> application, for example, to pre-loading and post-discharge periods or to
> carriage between two non-U.S. ports, "but the extent of any application
> beyond the scope of the statute is a matter of contract." *Hartford Fire Ins.*

CASE NO. 12-21965-CIV-ALTONAGA/Simonton

*Co. v. Orient Overseas Containers Lines*, 230 F.3d 549, 558 (2d Cir. 2000) (citing 46 U.S.C. app. § 1307). Consequently, if COGSA governed this carriage from Spain to China, it would do so only by contract and would not apply *ex proprio vigore*. *See* COGSA § 13, 46 U.S.C. app. § 1312; *Craddock Intern. Inc. v. W.K.P. Wilson & Son, Inc.*, 116 F.3d 1095, 1106-07 (5th Cir. 1997) (concluding that because carriage from Venezuela to Peru "did not involve . . . shipments to or from the United States," COGSA did not govern the underlying bills of lading *ex proprio vigore*) (citation omitted); *Croft & Scully Co. v. M/V SKULPTOR VUCHETICH*, 664 F.2d 1277, 1280 (5th Cir.1982); 2A Benedict on Admiralty ch. 5 § 46 (2003). Under these circumstances, "[a]s a rule adopted by and in a contract," COGSA's provisions are merely contract terms that are "modifiable by other language contained in the bill of lading." *Hartford Fire Ins. Co.*, 230 F.3d at 558 (citing *Pannell v. United States Lines Co.*, 263 F.2d 497, 498 (2d Cir. 1959)).

(Resp. 3 (quoting *id.*)). Based upon the foregoing passage, Plaintiff concludes: "Whether the subject bills of lading did or did not contractually extend some, all, or none of COGSA's protections to periods of time pre-loading, or post-discharge remains a question for another day; however, this would not require preemptive effect in any event since only the contractual protections would be extended [sic] not a statutory preemptive affect [sic]." (Resp. 3).

In addressing the parties' arguments, the Court notes at the outset that the Bill of Lading, although not attached to the Complaint, has clearly been incorporated by reference because it is directly referred to in the Complaint. (*See* Compl. ¶¶ 2, 5, 7); *see also Jordan v. Miami-Dade Cnty.*, 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006) ("On a motion to dismiss, the Court may consider documents attached to the Complaint or *directly referred to in the Complaint*.") (emphasis added); Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1327 (3d ed. 2007) (A defendant "may introduce [a] document as an exhibit to a motion attacking the sufficiency of the pleading . . . if the plaintiff has referred to the item in the complaint and it is central to the affirmative case."). The Court furthermore notes that because the parties contracted, pursuant to the Bill of Lading, for the COGSA to apply "[w]here loss or

6

damage has occurred between the time of receipt of the Goods by the Carrier at the port of loading and the time of delivery by the Carrier at the port of discharge" when "the carriage is to or from the United States of America" (Bill of Lading 2, § 4(2)(a)) — and since the Bill of Lading denotes carriage from Miami (*see id.* 1) — the COGSA applies to the periods of pre-loading and post-discharge. *See Kawasaki*, 130 S. Ct. at 2440 (The COGSA allows parties the option of contractually extending the COGSA's terms to cover the entire period in which the goods would be under a carrier's responsibility.). With these two points established, the remaining issue is whether contractual extension of the COGSA to pre-loading and post-discharge time periods also extends the statute's preemptive effect to tort claims arising from pre-loading and post-discharge activities.

Defendants argue that it does, and cite *Diamond v. State Farm Mutual Automobile Insurance Company*, in support. No. CIV S-09-1110MCEDAD PS, 2010 WL 2904640 (E.D. Cal. July 26, 2010). In *Diamond*, the district court was presented with the question of whether a substantively similar bill of lading, which "specifically extend[ed] the application of COGSA beyond the tackle to tackle period to the entire time that [the defendant-carrier] had custody and control of [the] plaintiff's goods," preempted the plaintiff's state law claims. *Id.* at *4 (citation omitted).[2] The *Diamond* court answered this question in the affirmative, finding that because the bill of lading extended the COGSA to all periods before loading and after discharge, the bill of lading also "extended COGSA preemption to all times before loading and after discharge," such that the "COGSA completely preempt[ed] any state law remedy." *Id.* In so holding, the

---

[2] The bill of lading in *Diamond* reads: "For all goods shipped to or from the United States of America, this [bill of lading] shall be subject to [the COGSA] which shall also apply by contract at all times before loading and after discharge as long as the good [sic] remain in the custody and control of the carrier." 2010 WL 2904640, at *5 (citation omitted).

CASE NO. 12-21965-CIV-ALTONAGA/Simonton

*Diamond* court found support for its ruling in the Supreme Court's decision in *Kirby*, wherein a carrier-defendant "chose to extend the default [COGSA] rule [in its bill of lading] to the entire period in which the [goods at issue] would be under its responsibility, including the period of the inland transport." 543 U.S. at 29. The *Kirby* Court concluded that such an extension must be given full effect because if it were not, "the apparent purpose of COGSA, to facilitate efficient contracting in contracts for carriage by sea, would be defeated." *Id*. Other courts, including the Eleventh Circuit, have more generally stated that where the COGSA applies, "it provides [a plaintiff's] exclusive remedy," further reinforcing Defendants' argument that a contractual extension of the COGSA entails preemption of state law claims. *Polo*, 215 F.3d at 1220 ("We conclude that because COGSA applies in this case, it provides [the plaintiff's] exclusive remedy.") (footnote call number omitted); *see Cont'l Ins. Co. v. Kawasaki Kisen Kasha, Ltd.*, 542 F. Supp. 2d 1031, 1034 (N.D. Cal. 2008) (citing *Kirby*, 543 U.S. at 28–29) ("[S]tate law must yield to COGSA where it applies.").

Plaintiff's sole argument against preemption — its quotation from the *Foster* decision — is unconvincing. At issue in *Foster* was the question of how a court should interpret a bill of lading that incorporated both the COGSA *and* a foreign legal framework, where the foreign legal framework conflicted with the COGSA as to the quantum of damages available for a claim arising out of the agreement. *See* 383 F.3d at 356. It was "[u]nder these circumstances" in which the *Foster* court found that the "COGSA's provisions are merely contract terms," otherwise "modifiable by other language contained in the bill of lading." *Id.* (internal quotation marks and citations omitted). Adhering to the legal maxim that "'[i]n a situation of potential contract ambiguity, an interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable,'" the

8

CASE NO. 12-21965-CIV-ALTONAGA/Simonton

*Foster* court found that, based upon the text of the bill of lading, the quantum of damages available was in fact dictated by the foreign legal framework, and not the COGSA. *Id.* at 358 (quoting *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 558 (2d Cir. 2000)).

The *Foster* case, while illuminating, has no application to the present dispute, where Plaintiff does not allege that the Bill of Lading expressly modifies, by its own terms, COGSA preemption with respect to claims arising out of pre-loading and post-discharge activities. And nothing in the *Foster* opinion suggests an exception to the general rule that where the COGSA applies, "it provides [a plaintiff's] exclusive remedy." *Polo*, 215 F.3d at 1220. Indeed, to hold otherwise would run contrary to "the apparent purpose of COGSA, to facilitate efficient contracting in contracts for carriage by sea." *Kirby*, 543 U.S. at 29. Thus, because the "COGSA leaves no state remedy in its wake[,] it provides an exclusive remedy and is therefore completely preemptive" of Counts Two and Three. *Cont'l Ins. Co.*, 542 F. Supp. 2d at 1034. Accordingly, those claims must be dismissed.

**B.  Attorney's Fees**

Defendants also argue that Plaintiff's prayer for attorney's fees should be stricken. "Absent some statutory authorization, the prevailing party in an admiralty case is generally not entitled to an award for attorneys' fees." *Noritake Co., Inc. v. M/V Hellenic Champion*, 627 F.2d 724, 730 (5th Cir. 1980) (citations omitted); *see, e.g., B.P. N. Am. Trading, Inc. v. Vessel Panamax Nova*, 784 F.2d 975, 977 (9th Cir. 1986). It is well-established that the COGSA "does not authorize an award of attorney's fees to a party prevailing in a suit under the act." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 839 (7th Cir. 2010) (citations omitted); *see, e.g., APL Co. Pte. Ltd. v. UK Aerosols Ltd.*, 582 F.3d 947, 957 (9th Cir. 2009). There are two judicially-

created exceptions to this rule, however. "The first type of exception allows attorneys' fees to an indemnitee as against his indemnitor — not as attorneys' fees qua attorneys' fees, but as part of the reasonable expenses incurred in defending against the claim." *Noritake*, 627 F.2d at 730 n.5 (citations omitted). And "[t]he second type of exception allows the discretionary award of attorneys' fees in admiralty cases when the nonprevailing party has acted in bad faith in the litigation. *Id.* (citation omitted).

Defendants assert that Plaintiff has not identified any statutory basis for Plaintiff's attorney's fees request to supplement the general maritime rule against such an entitlement. Defendants further argue that neither of the judicially-created exceptions to the rule is applicable. Plaintiff responds that "the instant action is brought seeking to make Plaintiff whole for the loss of cargo belonging to third parties," such that the indemnitor exception is met. (Resp. 3). But according to Defendants, where, as here, "Plaintiff clearly alleges that [it was] 'the shipper of the cargo in question and brings this action on its own behalf . . . .'" (Repl. 5 (quoting Compl. ¶ 3)), the indemnitor exception is inapplicable. *See Noritake*, 627 F.2d at 730 n.5.

Given that Counts Two and Three of the Complaint have been dismissed, the only remaining cause of action arises under the COGSA. Because the COGSA "does not authorize an award of attorney's fees to a party prevailing in a suit under the act," *Fednav*, 624 F.3d at 839 (citations omitted) — and since Plaintiff has not identified any statutory basis for its attorney's fees request — facts supporting one of the two judicially-created exceptions must be alleged to enable Plaintiff's prayer to survive the Motion. The bad faith exception clearly does not apply where, as here, "there was no such allegation of bad faith" in the Complaint, and Plaintiff does not suggest otherwise. *Noritake*, 627 F.2d at 730 n.5.

As to the indemnitor exception, Defendants quote from the Complaint wherein Plaintiff

"'brings this action on its own behalf . . . '" (Repl. 5 (quoting Compl. ¶ 3)), but in fairness to Plaintiff, a full reading of the excerpt shows Plaintiff also brings this action "on behalf of all who are or may become interested in the cargo" (Compl. ¶ 3).  While the complete text would appear to support Plaintiff's position, nevertheless, the Complaint contains no factual allegations supporting the existence of others who are or may become interested in the cargo.  Hence, the Complaint fails to state a plausible claim for attorney's fees predicated upon this exception. Plaintiff's prayer for attorney's fees is therefore stricken.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss **[ECF No. 5]** is **GRANTED**.  Plaintiff has until October 9, 2012 to amend its complaint should it wish to re-plead its request for attorney's fees.  Defendants shall calculate the time for filing a response from October 9 or earlier, should Plaintiff amend on an earlier date.

**DONE AND ORDERED** in Miami, Florida, this 1st day of October, 2012.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record